UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                              Date:  **June 27, 2012**

Title:     United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

PRESENT: HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

| Rita Sanchez | None Present |
| Courtroom Deputy | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:        ATTORNEYS PRESENT FOR DEFENDANT:

None Present                            None Present

PROCEEDINGS (IN CHAMBERS):  ORDER DENYING PRELIMINARY INJUNCTION [4]

## INTRODUCTION

Plaintiff United Fabricare Supply, Inc. ("United") is a dry cleaning supply company founded in 1983 in Compton, California. (Compl. (Docket No. 1)). Defendant 3Hanger Supply Company, Inc. ("3Hanger") is a dry cleaning supply company founded in 2009 in Hawthorne, California.

The material facts are not in dispute:

On February 27, 2012, an article entitled "Hanger Makers Swing in Wind?" was published in the *Los Angeles Business Journal* (the "LABJ Article"). The LABJ Article discussed the possibility that the federal government would impose tariffs on companies that import hangers from Vietnam or Taiwan. The LABJ Article reported that U.S. Hanger Co. LLC ("U.S. Hanger") and some other American hanger makers had petitioned for such tariffs and that their complaints had led to a federal investigation.

The LABJ Article contained numerous false statements regarding United's involvement in the tariff proposal. For example, the LABJ Article asserted that United is the parent company of U.S. Hanger, but United has no ownership interest in that company. In addition, the LABJ Article included statements from Sam Monempour, 3Hanger's Vice President, that "U.S. Hanger's parent company, the largest dry-

---
**CIVIL MINUTES—GENERAL**                                                   1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                        Date:  **June 27, 2012**

Title:         United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

cleaning supply distributor in Southern California, is trying to squeeze out other suppliers," and that "[t]hey won't sell hangers to me."  United does not manufacture hangers.

Shortly after the LABJ Article was published, 3Hanger prepared a pamphlet in which it reprinted the LABJ Article and included a discussion explaining why the "costs of [customers'] supplies will be increasing at such an alarming rate."  3Hanger distributed this pamphlet in hard copy and by email to various industry entities throughout Southern California, including many of United's customers.  The pamphlet included excerpts from different portions of the LABJ Article, combined together without correct attribution, and in some instances added United's name in bold print to sentences in which United had not been mentioned in the original text.  3Hanger also posted this information on its website.

The *Los Angeles Business Journal* acknowledged the errors in the LABJ Article, published a retraction, and on April 26, 2012, issued a cease-and-desist letter to 3Hanger, stating that 3Hanger did not have permission to republish the LABJ Article. 3Hanger took the LABJ Article off of its website, and has ceased any other republication of the LABJ Article.

In addition, in or around September 2010, 3Hanger sold dry cleaning "poly bags" in boxes which originally had been printed with United's logo and other marks. (United had cancelled an order for poly bags from a mutual supplier.)  The supplier affixed labels with 3Hanger's name on the boxes to cover United's name, which still was printed on the boxes and could be seen by peeling back the label.  This was an isolated incident.

On or about May 12, 2011, 3Hanger sold boxes of United's copyrighted caped hangers (bearing the phrase "Your Clothes Cleaned & Pressed For Your Success") to Hispanic Indoor Media, Inc. ("HIM").  (Again, United had rejected these caped hangers from a mutual supplier.)  HIM apparently attached print advertising (relating to the premier of TNT's television show "Franklin and Bash") over United's copyrighted material, although the print advertising did not completely cover United's marks.  HIM then shipped the hangers to a third-party logistics company, Promotional

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  **CV 12-03755-MWF (FFMx)**                    Date:  **June 27, 2012**

Title:        United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

Fulfillment Services, Inc.  On June 21, 2011, 3Hanger received a cease-and-desist letter from an attorney representing United with respect to these caped hangers, and 3Hanger has not knowingly sold any United hangers since.

On May 1, 2012, United filed a Complaint against 3Hanger alleging five claims for relief:  (1) unfair competition and false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) *et seq.*; (2) false advertising under California Business & Professions Code § 17500 *et seq.*; (3) unfair business practices under California Business & Professions Code § 17200 *et seq.*; (4) trade libel; and (5) trade dress infringement under the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

United also filed an Ex Parte Application for Order to Show Cause and Temporary Restraining Order, seeking an order against 3Hanger's continued republication of the LABJ Article, as well as its use and/or sale of products bearing United's trademark and copyrighted material.  (Docket no. 4.)  The Court (the Honorable Jacqueline H. Nguyen) granted United's application for a temporary restraining order and ordered 3Hanger to show cause why a preliminary injunction should not issue.  (Docket No. 13).

The Court has read and considered the papers filed with respect to the preliminary injunction and on June 25, 2012, heard oral argument.  For the reasons discussed below, the preliminary injunction is DENIED.

## DISCUSSION

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)).  The main issue for the Court is whether there is irreparable harm arising from a likelihood of repeated behavior.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                              Date:  **June 27, 2012**

Title:        United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

## I.     LIKELIHOOD OF SUCCESS ON THE MERITS

### A.    Unfair Competition and False Advertising Under the Lanham Act

Under the Lanham Act, a "prima facie case requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)).

United argues that it is likely to succeed on the merits of its false advertising claim based on 3Hanger's distribution of the LABJ Article pamphlet and the alterations 3Hanger made to the LABJ Article excerpts therein.  The Court agrees, and 3Hanger's arguments to the contrary are unpersuasive.  The Court addresses 3Hanger's arguments in turn.

As an initial matter, there is some disagreement between the parties regarding the corporate relationship between United and U.S. Hanger.  3Hanger argues that there is *some* relationship between these two entities.  United maintains that there is no parent-subsidiary relationship and that United does not own any shares of stock in U.S. Hanger.  The Court notes that on April 30, 2012, the Los Angeles Business Journal published a retraction:  the LABJ Article "incorrectly stated that U.S. Hanger Co. is a subsidiary of [United].  While there are some common ownership ties between them, the two companies are separate."  The Court thus finds that the LABJ Article (even in its unaltered version) was false.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                          Date:  **June 27, 2012**

Title:        United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

     3Hanger's argument that "many" of the statements "at issue" were made by the Los Angeles Business Journal and not 3Hanger ignores the fact that 3Hanger made these false statements in republishing the LABJ Article (again, even in an unaltered version).  *See Sigma Dynamics, Inc. v. E.Piphany, Inc.*, No. C 04-0569MJJ, 2004 WL 2533220, at *4 (N.D. Cal. Nov. 8, 2004) (denying motion to strike allegations relating to "Defendant's republication of false third party statements" in Lanham Act false advertising case); *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1543-44 (S.D.N.Y. 1994) (denying motion to dismiss with respect to defendants' "secondary" use of articles to promote defendants' products).

     Nor will the Court at this stage parse through 3Hanger's altered excerpts from the LABJ Article – *e.g.*, its reordering, additions, emphasizing, attributions, and deletions – to conclude, as 3Hanger argues, that the few statements 3Hanger "did make" (*i.e.*, the actual words inserted) were not about United's or 3Hanger's products or services.  The import of 3Hanger's distribution of the LABJ Article pamphlet was to communicate to the dry cleaning industry that United was seeking to drive up the price of products sold by United's competitors, and that as a result customers would suffer.  *See Paradise Canyon, LLC v. Integra Invs., LLC*, No. 2:07-cv-1701-RLH-GWF, 2008 WL 746919, at *2 (D. Nev. Mar. 18, 2008) (granting preliminary injunction and denying motion to dismiss where plaintiff "alleges that it will suffer monetary loss and harm to its business reputation and goodwill as a result of [defendant]' s allegedly false advertising" under Lanham Act).

     Particularly with respect to the pamphlet prepared by 3Hanger, the excerpts from the LABJ Article – in their entirety – are attributable to 3Hanger.  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("[I]n determining facial falsity the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth separately and in isolation from each other.  Thus courts have held that a claim can be literally false by necessary implication." (citations and internal quotation marks omitted)).  Taking the LABJ Article, the excerpts and the 3Hanger pamphlet "in their full context," 3Hanger's statements are actionable.  *Id.*

     Finally, at this stage the Court finds that the statements distributed by 3Hanger in the LABJ Article pamphlet amount to "commercial advertising or promotion."  For

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                                   Date:  **June 27, 2012**

Title:         United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

statements to be considered "commercial advertising or promotion" under the Lanham Act, "they must be:  (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services.  While the representations need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,' the representations (4) must be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry." *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999) (citation omitted).

The Court likens the facts in this case to those in *Gordon & Breach*, 859 F. Supp. 1521.  There, plaintiff publishers of scientific journals sued competing publishers for false advertising under the Lanham Act.  The defendants had published "comparative surveys of scientific journals which, through the employment of a misleading rating system, rate[d their] own publications as superior" to those of the plaintiffs.  *Id.* at 1523.  Plaintiffs argued that the "articles [we]re promotional materials cloaked in the deceptive guise of 'neutral' academic inquiry, and thus constitute[d] misleading advertising under the Lanham Act, 15 U.S.C. § 1125(a)."  *Id.*

The court in *Gordon & Breach* distinguished between the initial publication of the surveys and the defendant's "secondary," promotional use of those surveys.  *Id.* at 1543-44 ("These claims – that defendants distributed preprints at a librarians' conference and have continued to disseminate the results of [the] surveys to librarians – differ from defendants' initial publication of the articles and from defendants' letter to the editor and press release.").  The court found that:

> The situation is similar to that of a restaurant or movie review or a *Consumer Reports* product report. . . . [A] restaurant clearly engages in commercial speech when it posts the New York Times review in its window, and General Motors engages in commercial speech when it announces in a television commercial that its car was ranked first by *Consumer Reports*.  The *Consumer Reports* article, of course, does not somehow become commercial speech; **rather, G.M.'s use of the article is commercial speech**.  Consequently, G.M. may be sued under the Lanham

---

**CIVIL MINUTES—GENERAL**                                                              6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**               Date:  **June 27, 2012**

Title:     United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

    Act, and *Consumer Reports*' testing methodology may become subject to judicial scrutiny to determine whether G.M. "use[d] in commerce" a "false or misleading representation of fact."

*Id.* at 1544 (emphasis added) ("We do not reach a different conclusion here merely because the secondary user of the articles is the same entity that published them in the first place.  We conclude, accordingly, that [the secondary use claims] constitute 'commercial advertising or promotion'" under the Lanham Act).

    Likewise, the Court finds that 3Hanger's "use" of the LABJ Article constituted commercial speech, particularly its distribution of a pamphlet including altered excerpts from the LABJ Article as part of a discussion of industry pricing and products.  3Hanger is a commercial competitor of United, and on the current record the Court finds that 3Hanger used the LABJ Article to promote its own business at the expense of United's standing and reputation with customers.  For example, the pamphlet reads:  "We hope this helps to at least explain the increasing cost of your supplies.  We at [3Hanger] are doing everything we can to bring back some relief to this situation."  Indeed (and again only at this preliminary stage), it appears that 3Hanger widely disseminated the LABJ Article to induce customers to buy its products, and not just to "comment on an industry-wide occurrence" as 3Hanger suggests.

    Accordingly, the Court holds that United is likely to succeed on the merits of its Lanham Act claim.

    **B.**    **False Advertising and Unfair Business Practices, Cal. Bus. & Prof. Code §§ 17500, 17200**

    Because United is likely to succeed on the merits of its Lanham Act claim, it also is likely to succeed on its California state law claims.  *See, e.g.*, *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act."); *J.K. Harris & Co. v. Kassel*, 253 F. Supp. 2d 1120, 1130 n.9

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                             Date:  **June 27, 2012**

Title:         United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

(N.D. Cal. 2003) ("Plaintiff's request for injunctive relief pursuant to California's prohibition on false and misleading advertising is duplicative of its request under section 43 of the Lanham Act.  Under Cal. Bus. & Prof. Code § 17500, Plaintiff is entitled to the same relief enjoining specific allegedly false and misleading statements to which it is entitled under the Lanham Act.").

### C.   Trade Libel and Trade Dress Infringement

United's claims for trade libel and trade dress infringement are less strong than the claims previously discussed, and received less attention in United's briefing.  However, at this time the Court need not make a determination with respect to these claims.  *TravisMathew, LLC v. Leisure Soc'y Unltd., LLC*, No. SACV 12-213-JST (MLGx), 2012 WL 1463548, at *2 (C.D. Cal. Apr. 26, 2012) ("Plaintiff asserts that it is likely to succeed on the merits of its breach of contract, Lanham Act, and UCL claims.  Because the Court concludes that Plaintiff is likely to succeed on its breach of contract claim, the Court will not analyze the likelihood of success on the merits of Plaintiff's other claims.").

### II.   LIKELIHOOD OF IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF

Ultimately, this matter turns on United's ability to convince the Court that it will suffer irreparable harm in the absence of preliminary relief.

The September 2010 incident, in which 3Hanger sold boxes originally imprinted with United's name, is not only dated but isolated.  On the current record, there is no evidence of a similar occurrence, let alone evidence that another such incident would be likely in the absence of a preliminary injunction.  The Court has a similar view of the May 2011 incident, in which 3Hanger sold United-branded caped hangers.

More importantly, on the current record, it appears that 3Hanger has complied, and would continue to comply, with the Los Angeles Business Journal's cease-and-desist letter, which denies 3Hanger permission to republish or otherwise distribute the LABJ Article in any format.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                                   Date:  **June 27, 2012**

Title:         United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

---

While it may be true, as United argues, that United "has suffered irreparable harm to its reputation," that United "has received customer complaints," that "orders were put on hold," and that United "needed to utilize extra manpower to respond to [3Hanger]'s false statements and unauthorized use of its products," this all would go to liability for 3Hanger's past acts. There is no evidence that United is *likely* to suffer irreparable harm in the future. *Villegas v. Schulteis*, No. 1:09-cv-00493-AWI-SKO PC, 2010 WL 3341888, at *3 (E.D. Cal. Aug. 25, 2010) ("The purpose of a preliminary injunction is to prevent future irreparable harm, not to remedy past harm. Plaintiff has failed to identify any specific threat of future irreparable harm. Plaintiff must identify a risk of future harm that is more specific than a general fear of future harassment based on alleged past incidents of harassment.").

United's only suggestion of likely, "future" harm relates to the Fabricare Conference on July 14 and 15, 2012, at the Long Beach Convention Center. The Fabricare Conference is an industry trade show, at which United and 3Hanger will be exhibitors. Counsel for 3Hanger represented to the Court at the hearing that, given the *Los Angeles Business Journal's* cease-and-desist letter and this lawsuit, 3Hanger will not distribute the LABJ Article, the pamphlet discussed above, or any similar materials.

Counsel for United also voiced the concern that Sam Monempour would denigrate United at the Fabricare Conference because the United (or U.S. Hanger) and 3Hanger booths would not be adjacent. Certainly the record suggests a basis for that concern. Mindful of the First Amended, however, the Court cannot fashion an order sufficiently narrow and unambiguous that is untethered to the distribution of the pamphlet or the article.

The Court therefore finds that United has failed to demonstrate that irreparable harm would be likely in the absence of a preliminary injunction. However, this ongoing lawsuit, the potential for damages for willful conduct or exemplary damages, and the tools of discovery under the Federal Rules of Civil Procedure should adequately protect United's interests if 3Hanger were to reinitiate its alleged "false advertising campaign."

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.   **CV 12-03755-MWF (FFMx)**                               Date:  **June 27, 2012**

Title:       United Fabricare Supply, Inc. -*v*- 3Hanger Supply Company, Inc.

### III.   BALANCE OF EQUITIES AND PUBLIC INTEREST

As discussed above, United has not demonstrated that it is likely to suffer irreparable harm in the absence of injunctive relief.  Past harms are insufficient grounds on which to base a preliminary injunction.  The Court also is mindful of 3Hanger's First Amendment freedom to comment on matters of public concern, including the tariff proposal.  Regardless, given the finding above as to United's failure to show a likelihood of irreparable harm, the Court need not reach the issues of the balance of equities and the public interest.

### IV.   EVIDENTIARY OBJECTIONS

Given that the material facts are not in dispute, the Court need not reach the parties' evidentiary objections.  (Docket Nos. 21, 25).  In any event, for purposes of a preliminary injunction, the "trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

### CONCLUSION

The preliminary injunction (Docket No. 4) is DENIED.  This denial is without prejudice to the right of United or U.S. Hanger to bring another application for a TRO or motion for summary judgment based on 3Hanger or Monempour's future conduct, and of course to their right to recover damages at law.

IT IS SO ORDERED.